66 N.J. Super. 1 (1961)
168 A.2d 228
JOSEPH GALLO, ADMINISTRATOR OF THE ESTATE OF PASQUALE GALLO, DECEASED, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
JAMES GALLO, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1961.
Decided February 24, 1961.
*3 Before Judges GOLDMANN, FOLEY and NADELL.
Mr. Howard Stern argued the cause for defendant-appellant and cross-respondent, (Mr. Lawrence Diamond, attorney).
Mr. J. Mortimer Rubenstein argued the cause for plaintiff-respondent and cross-appellant (Mr. George L. Garrison, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an action for an accounting of monies disbursed by defendant pursuant to a power of attorney given him by his aged father, plaintiff's decedent.
The power of attorney, executed on June 4, 1951, was in broad terms. By it defendant was authorized to disburse in decedent's behalf funds on deposit in the United States Trust Company, Paterson, New Jersey, and in addition he was empowered to manage all funds of decedent and to collect rents from property which he owned. No direction was given to defendant concerning the keeping of records of either income or disbursements, nor was indication given that defendant would be expected to account formally. Decedent was then 85 years of age and bedridden. Defendant acted under the power of attorney until decedent's death in 1955.
This action was brought to require defendant to account for the sum of $28,252.11 which he claimed to have disbursed in decedent's behalf during the intervening period. The trial court discharged the accountant of $6,703.37 of this amount, leaving a balance unaccounted for of $21,548.74, with interest at a rate of 6% per annum from August 20, 1951 aggregating $11,097.60, or a total of $32,646.34. Defendant appeals; plaintiff cross-appeals from the dismissal of his claim for an accounting of rentals allegedly collected by defendant.
The central question involved is whether the funds of the decedent disbursed by defendant were used entirely for the *4 benefit of decedent. It was agreed at the outset of the trial that defendant was required to go forward and account for the disposition of all funds of decedent which had come into defendant's hands during the period in which the power of attorney was in effect. It is not disputed by the parties that the legal relationship between the decedent and defendant established by the power was one of principal and agent, as distinguished from trustee and cestui. Rather, the basic disagreement concerns the degree of the burden which the law places on an accountant in circumstances such as are here presented, and the quantum of proof he is required to supply in discharge of such burden. Defendant contends that the trial court erroneously was guided in its factual determinations by the concept that his obligations in these respects were those of a trustee, and thus encompassed a duty to keep and render a clear and accurate account of the administration of the funds, pointing to the reliance of the trial court on In re Atkinson's Estate, 86 N.J. Eq. 173 (E. & A. 1916), and to the disallowance of certain items of discharge claimed by defendant upon the ground that they were not "substantiated." Defendant argues that since the agent was not required by his principal to keep and maintain records in substantiation of disbursements, which would have been his obligation had he been a trustee, his failure to do so should not have been held against him when he was called upon to account. Rather, says defendant, his naked word that he had expended decedent's monies in his behalf was prima facie sufficient for the purposes of accounting in these particular circumstances, and in the absence of contradiction should have been accepted by the trial judge.
Where the principal expressly, or by implication, has led the agent to believe that he would not be required to account, or that a particular method or kind of accounting would be satisfactory, he cannot complain that the agent has not kept accounts with the strictness which might otherwise have been required, providing he has acted in good faith. Pennsylvania Trust Co. v. Billman, 61 F.2d 382 (3 Cir. *5 1932). Cf. Robbins v. Robbins, 3 A. 264 (N.J. Ch. 1885); Wilson v. White, 223 Mich. 497, 194 N.W. 593, 597-599 (Sup. Ct. 1923). The informality of the arrangements between decedent and defendant negates the idea that it was either intended or understood that defendant would be called upon by decedent to make a formal accounting of his disbursements. Thus, to hold defendant to the strict standards of proof required of trustees would be in disaccord with existing law. However, this did not relieve defendant of his burden of proving that he had expended the funds for decedent's benefit, when called upon to do so. In view of his broad discretion he was not required to show that his expenditures were necessary nor was proof corroborating his testimony requisite. Yet, if he relied solely upon his own testimony to prove that the funds had been expended exclusively for decedent's benefit, his credibility was put in issue. It follows that if the trial court concluded that his testimony was so lacking in probative weight as to fail to persuade the court that the disbursements were made solely in decedent's behalf, the court was free to reject it even if it was uncontradicted. Testimony to be believed must proceed from the mouth of a credible witness, must be credible in itself, and must be such as the common experience and observation of mankind can approve as probable in the circumstances. In re Perrone's Estate, 5 N.J. 514, 522 (1950). Moreover, it is a well established and obviously salutary rule in this State that the testimony of a witness need not be believed when the only person who could have contradicted the witness is dead. Ibid.
Firmly entrenched in decisional law and court rule is the concept that the question of credibility is preeminently one for the trial court, since it hears the case, sees and observes the witnesses, hears them testify, and has better opportunity to judge their credibility than the reviewing court, Capozzoli v. Capozzoli, 1 N.J. 540 (1949). Appellate courts are reluctant to disturb findings of fact made below, Sheehan v. Sheehan, 51 N.J. Super. 276 (App. Div. 1958), *6 certification denied 28 N.J. 147 (1958), although this court pursuant to R.R. 1:5-4(b) is free to do so.
While the trial court made no express finding on the issue of defendant's credibility, it is evident that in disallowing items of discharge concerning which defendant's testimony was contradicted, the court found his testimony to be of unacceptable weight. And while it may be that the court mistakenly applied to some items about which defendant's testimony was uncontradicted the stricter standard of proof which applies to the accounting by a trustee, our review of defendant's testimony convinces us that the trial court was justified in finding this testimony to be unpersuasive on matters of crucial importance. For example, on August 20, 1951, about 2 1/2 months after his stewardship commenced, defendant withdrew $18,000 from decedent's bank account, on November 9, 1951, $2,000, and on December 27, 1951, $1,000. His testimony concerning these transactions follows:
"Q. Mr. Gallo, I show you this statement and ask you if you didn't, on August 20, 1951, withdraw from that account in one lump sum, the sum of $18,000? A. Yes, sure I did.
Q. Yes? A. Yes.
Q. Did your father at that time owe $18,000 in bills? A. What was that?
Q. Did your father at that time owe $18,000 in bills? A. I don't think so.
Q. Can you tell us why you withdrew $18,000 in one lump sum? A. To make it more convenient, I had to go back and forth. I was paying for everything myself. Nobody wanted to take care of anything. You couldn't talk to them.
Q. What did you do with the $18,000? A. I used it as I went along.
Q. Did you put it in any bank account, Mr. Gallo? A. I must have put it in the bank account. I don't know whether I did or not. Maybe I had the cash.
Q. You don't know if you put it in the bank account? A. No. I don't recall the $18,000. Yes, I paid cash for most of the stuff.
Q. You had no interest being drawn on that $18,000 from the time you drew it out? A. Everything was up to me. You couldn't talk to them.
Q. Did you have it any place which was drawing interest after you withdrew it? A. No.
*7 Q. I show you a withdrawal on November 9, 1951. Did you withdraw from the account $2,000? A. If it says, yes, I must have taken it out.
Q. You had not used up the $18,000 yet, had you, by November of 1951? A. I don't think so.
Q. Why did you withdraw the $2,000? A. To make it convenient for everybody, for myself, and to see that I took care of everything.
Q. Could you tell me how this made it convenient for you, Mr. Gallo? A. Who was I going to send? Who was I going to ask?
The Court: Do not ask questions.
The Witness: What did you say?
Q. Can you tell us how the withdrawal of the $2,000 on November 19, 1951 would make it convenient for you? A. I must have had to pay something.
Q. You had withdrawn $18,000 two months before that, had you not? A. Yes.
Q. Three month before. A. I guess so.
Q. You still had the $18,000, did you not? A. I guess I did.
Q. So that you did not need the $2,000 then in November of 1951, did you? A. No.
Q. Pardon? A. I was the boss of the money.
Q. Because you were the boss of the money. Did you put that $2,000 in a bank account? A. I don't know whether I did or not.
Q. One month later, on December 27, 1951, you withdrew $1,000, did you not? A. That's right.
Q. Do you know whether you put that in an account? A. I don't know."
Granting that defendant was burdened only to establish that he expended these monies for decedent's benefit, and that his word would suffice for the purpose if the trial court found it to be reliable, the size of the sum involved and the haziness of defendant's recollection of why he made the withdrawals, and where he kept the money, could not fail to cast doubt on  at the least  the accuracy of his testimony respecting expenditures. We think, therefore, that the trial judge was entirely correct in his ultimate conclusion that defendant failed to prove that he had spent in decedent's behalf the funds committed to his care.
However, we think also that in the absence of a direct finding that defendant acted in bad faith or had grossly misconducted decedent's affairs the 6% interest rate upon *8 the sum charged against the accountant should not have been allowed. As noted, the arrangements between decedent and defendant, father and son, were quite informal. Had decedent imposed on defendant the obligation to keep records and to account, the course pursued by the latter would appear in a different light. But such is not the case, and the trial court in surcharging defendant may have concluded that he was chargeable only with negligence, not amounting to bad faith or gross misconduct. Interest in these circumstances is allowed not as a penalty but as compensation to the beneficiaries so that they may be reimbursed as nearly as possible for the loss resulting from failure of income. Ditmars v. Camden Trust Co., 10 N.J. Super. 306, 335 (Ch. Div. 1950), modified on other grounds 10 N.J. 471 (1952).
Accordingly, the judgment will be modified to the end that interest be computed at the rate of 4% per annum from the dates of the three respective withdrawals referred to herein.
We find no reason to disturb the court's finding that plaintiff did not carry his burden of proving that defendant collected $762 as rents from August 1952 through January 1953. Therefore, the dismissal of this claim is affirmed.
Remanded for proceedings not inconsistent herewith.