**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0025-17T1

J.B.,

    Plaintiff-Respondent,

v.

J.D.,

    Defendant-Appellant.

_____

Submitted August 7, 2018 — Decided August 10, 2018

Before Judges Sabatino and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-1966-17.

Eli L. Eytan, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

Defendant J.D. appeals from two July 17, 2017 orders, which denied her a Final Restraining Order (FRO) against plaintiff J.B. and granted J.B. an FRO against J.D., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

The parties are the parents of a child and live in the residence of defendant's grandmother, along with defendant's children from a different relationship. On the evening of June 10, 2017, the parties had returned from a family outing. The parties' testimony at the FRO hearing[1] diverged regarding what happened next.

According to plaintiff, at approximately 8:00 p.m. defendant left the residence to socialize with her friends. Plaintiff consumed three shot glasses of scotch, retired to bed at 10:00 p.m., and later awoke at 2:00 a.m. to have a cigarette on the back porch of the residence. Plaintiff claimed he stepped off the porch and urinated in the backyard. When plaintiff attempted to re-enter the residence, he and defendant began a physical altercation.

Plaintiff testified he re-entered the residence and was standing in the foyer. He testified defendant was intoxicated, attempted to push him out of the home, and screamed at him to leave. Plaintiff testified he agreed to leave, but requested his debit card, which defendant refused to give him. Instead, she continued to scream at him, pushed him to the ground two times, ran into the kitchen, and returned with two knives and attacked

---

[1] Defendant was represented by counsel at the hearing and plaintiff was self-represented.

A-0025-17T1

plaintiff. Plaintiff testified defendant stabbed him in the bicep and cut his forearm, and that he grabbed her wrists in self-defense to prevent further injury.

According to defendant, plaintiff's abuse of alcohol was a contentious issue throughout the parties' relationship. Defendant testified that after the parties returned from the family outing, they put the children to bed at approximately 8:00 p.m. Defendant testified she had plans to visit her friends at approximately 10:00 p.m., and needed to use the parties' vehicle. Before defendant left, plaintiff announced he was taking the vehicle to the gas station to fuel it. According to defendant, based on the parties' history, defendant actually intended to consume beer he had stored in the vehicle; therefore she hid the beer in the trunk.

According to defendant, while she was out, plaintiff had sent her a text message at 12:11 a.m. stating: "Trust that I am going to get you back for stealing my beer. That is all. I do love you. Know that as well. And you're going to stop bitching as well[;] know that." Defendant testified she returned from visiting her friends at approximately 12:45 a.m. Plaintiff was asleep, and defendant laid next to him playing a game on her telephone. Defendant testified plaintiff awoke at approximately 1:45 a.m., and was intoxicated. He stumbled out of bed and onto the back porch and began urinating on the deck.

A-0025-17T1

Defendant testified she got out of bed, pushed plaintiff, and locked him out of the residence. According to defendant, plaintiff "knocked [a] window in," leaned through the window, and "smacked the [telephone] out of [defendant's] hand" while she attempted to call the police. Defendant testified plaintiff was attempting to enter the residence through the window, and she was pushing him out. She testified

> [a]nd then we were scuffling a little bit. And he grabbed me by my right bicep[] and my throat. . . . And he looked me dead in my eye. He said "[J.D.], don't make me hurt you." And as he was choking me, he had a knife on the window sill. And, with my right arm, 'cause it was free from the elbow down, I grabbed the knife and I stabbed him in the right bicep.
>
> And then he let go of my throat. But by this point . . . he was back in the foyer. And then my dog heard the scuffle, and she charged into the back room and got between us, and her going after him, gave me the opportunity to . . . get out of the back room[.]

Defendant testified plaintiff was the aggressor during the argument, and that he grabbed her upper arm and tried to choke her. Defendant adduced photographs purporting to show bruising to her arm and neck. Defendant denied retrieving a knife from the kitchen and intentionally stabbing defendant. She testified she used the knife in self-defense by taking it from the window sill during the altercation. She claimed "[plaintiff] just kept knives,

4

kitchen knives, pocket knives, utility knives, they were everywhere."[2]

Defendant called the police, but she was arrested as a result of the injuries police observed on plaintiff. Following defendant's arrest and removal from the parties' residence, the parties exchanged a series of texts. Although we have not been provided with a copy of it, defendant confirmed on cross examination that plaintiff sent her a text stating "I'll just stop texting you; I will see you in court. Tonight looks great for you." to which defendant responded "You too sweetness, with your dramatic ass self."

At 6:31 a.m., defendant began texting plaintiff with regard to the parties' son. Her first text stated: "I know things got out of hand the other night, but can we be okay and civil enough to handle [our son] and life without the court involved?" Plaintiff did not respond to this message. At 8:00 p.m., defendant sent a final message "Please don't make me call the police. If you keep ignoring me while you have my son the police will be knocking on the front door and I will file a motion for custody."

---

[2] Defendant also adduced testimony from her grandmother for purposes of corroborating her claim that plaintiff kept knives "everywhere."

A-0025-17T1

The trial judge rendered an oral decision and subsequently filed an amplification pursuant to Rule 2:5-1 to clarify her findings regarding credibility. The judge found plaintiff had proved assault pursuant to N.J.S.A. 2C:12-1(a)(1), and concluded defendant had neither proved assault nor harassment pursuant to N.J.S.A. 2C:33-4(a) or (b), as defendant had argued.

The trial judge found plaintiff to be more credible than defendant. Because of the diametrically opposite testimony regarding the incident and the lack of a history of domestic violence to aid the judge to determine who the aggressor was, the judge made detailed credibility findings in order to adjudicate the dispute. The judge stated:

> With respect to . . . plaintiff, I did find his testimony to be direct and straightforward. There were some small issues that required clarification. [Defendant's counsel] points out [Exhibit] D-1, that even though [plaintiff] said that he was asleep throughout the night, that D-1 indicates that he was, in fact, awake an[d] able to send a text.[3]
>
> And I do find that that was . . . what the [c]ourt would characterize as a small discrepancy. But, otherwise, [plaintiff] was direct and straightforward. And generally speaking, he held up under cross examination. He remained steady and consistent.
>
> . . . .

---

[3] D-1 refers to text messages introduced into evidence on July 11, 2017.

[P]laintiff's testimony was very detailed . . . he made excellent eye contact, both on direct examination and . . . essentially throughout his entire testimony.

. . . .

[T]he details of the plaintiff's testimony certainly were corroborative . . . . He was incredibly detailed as to where he and . . . defendant were standing when this incident took place.

The trial judge drew a different conclusion regarding defendant's credibility. The judge noted defendant's "eye contact [was] very poor." Importantly, "[t]he [c]ourt also found the sequence that . . . defendant put forth to be at times confusing, and certainly . . . did not make sense the same way that . . . plaintiff's testimony clearly did."

The trial judge found the photos that plaintiff adduced as evidence of the stab wounds to his bicep and arm consistent with plaintiff's description of the incident, i.e., "that it was . . . defendant who was advancing on . . . plaintiff and not the other way around." The judge found implausible defendant's testimony regarding the location of the knife she used to stab plaintiff. The judge stated in that regard: "The steak knife in the defendant's words was immediately nearby on the window sill. And the fact that it was so close on the window sill after she alleges being choked . . . in the [c]ourt's estimation, def[ies] a

sequential logic." The judge concluded the testimony of defendant and her grandmother that steak knives were kept "everywhere" was not believable, "especially with . . . kids . . . running around, it defies logic that there would be . . . a steak knife on the window sill . . . ."

The judge found defendant's text messages to plaintiff following the incident further confirmed she was the aggressor. The judge concluded:

> Importantly, in the [c]ourt's view, the defendant made, if not a full admission of sorts in her text, certainly an . . . acknowledgement of her own conduct in text messages where she said, "I know things got out of hand . . . the other night."
>
>     . . . .
>
> And, again, if that's not entirely an admission of sorts, it's certainly an acknowledgment of her own behavior not being entirely self-defense as she wants the [c]ourt to consider it for.
>
> There also was another text message that . . . plaintiff pointed out, where . . . defendant replied to . . . plaintiff, calling him a "dramatic ass self." And, again, in the [c]ourt's view, a reasonable person wouldn't call the aggressor a "dramatic ass self." Typically speaking, that would be words that you would use to somebody that may have been victimized, and then accusing that victim of being dramatic about the nature and extent of the victim's wounds.

The trial judge concluded defendant had assaulted plaintiff by admitting to pushing him and due to the evidence that she had stabbed him with a knife. The judge concluded the evidence of injury to defendant's neck and wrists supported his claim that he was pushing defendant away in self-defense.

As we noted, the judge concluded defendant had not proved either harassment or assault by plaintiff. The judge's findings plaintiff had physical contact with defendant for self-defense purposes negated the requisite mens rea necessary to prove harassment under N.J.S.A. 2C:33-4(b) or assault. The judge characterized the texts plaintiff had sent defendant as "impolite conversation" and "domestic contretemps." Moreover, the judge found the texts sent by plaintiff after the incident were not proof of harassment but "understandable, after plaintiff had been stabbed." Thus, the judge concluded the texts were not sent by plaintiff for purposes of annoying or alarming defendant.

The trial judge additionally found plaintiff needed the protection of an FRO because he felt unsafe in defendant's presence, and feared her. The judge also found plaintiff to be in immediate danger because of defendant's use of a knife against him.

The judge therefore granted plaintiff the FRO and dismissed defendant's complaint. This appeal followed.

On appeal, defendant contends the trial judge's credibility findings are not entitled to deference because the judge allegedly overlooked photographic evidence of marks on defendant's neck and wrists. Defendant argues the photographic evidence was not impeached and was consistent with her testimony that plaintiff choked her. Defendant further asserts the judge's findings regarding plaintiff's credibility were erroneous because the judge did not address "the effect that alcohol and intoxication would have on [plaintiff's] recollection and perception." Defendant notes plaintiff did not dispute he urinated on the deck or that he sent defendant a text threatening to "get [her] back for stealing [his] beer."

In addition to these specific claims, defendant argues the trial judge's findings reflect she was biased against defendant. Defendant notes the trial judge was the same judge who presided at a hearing to modify the initial Temporary Restraining Order (TRO), at which the judge maintained custody of the parties' son with plaintiff. Defendant argues the judge's reliance on the presumption of custody to the non-abusive parent was based on the fact the judge failed to disclose she was privy to a report from the Division of Child Protection and Permanency (DCPP).

Defendant also asserts that "[w]hile not articulated at the hearing, the evidence of damage to the window and door could have

10

supported a finding of domestic violence based on criminal mischief." We address defendant's arguments in turn.

We begin by reciting our standard of review. In <u>Cesare v. Cesare</u>, 154 N.J. 394 (1998), the Supreme Court addressed the standard of review we apply to domestic violence matters. The Court stated:

> The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co.</u>, 65 N.J. 474, 484 (1974). Deference is especially appropriate "when the evidence is largely testimonial and involves questions of credibility." <u>In re Return of Weapons to J.W.D.</u>, 149 N.J. 108, 117 (1997). Because a trial court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." <u>Pascale v. Pascale</u>, 113 N.J. 20, 33 (1988) (quoting <u>Gallo v. Gallo</u>, 66 N.J. Super. 1, 5 (App. Div. 1961)) (alterations in original). Therefore, an appellate court should not disturb the "factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." <u>Rova Farms</u>, 65 N.J. at 484. The appellate court should "exercise its original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." <u>Ibid.</u>
>
> Furthermore, matrimonial courts possess special expertise in the field of domestic

relations. See Brennan v. Orban, 145 N.J. 282, 300-01 (1996).

. . . .

Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding. As noted previously by this Court, the Legislature "has reposed grave responsibilities on Family Part judges to ensure the safety and well-being of women and children in our society. . . . We are confident that they can successfully balance the interests of society in deterring the evils of domestic violence and caring for families." Brennan, 145 N.J. at 304-05.

[Cesare, 154 N.J. 411-12.]

We reject defendant's challenges to the trial judge's credibility determinations because such findings are entitled to a high degree of deference. Moreover, as we recited above, when faced with diametrically opposite explanations of the incident between the parties, the trial judge gave detailed reasons why she found defendant's testimony not credible and plaintiff's recitation truthful. Contrary to defendant's argument on appeal, by comparison, the trial judge was not required to explore the impact of plaintiff's alcohol use on his ability to recall the facts, where the record demonstrated there was no issue with his recollection during his testimony. The record also demonstrates defendant's counsel was able to probe plaintiff's recollection of the incident and draw an admission from plaintiff regarding his

12

use of alcohol on the night in question. Notwithstanding, the judge found the greater weight of the evidence supported plaintiff's version of the incident. We have no basis to second guess the judge's findings, which have ample support in the record.

We also disagree with defendant's contention the trial judge overlooked evidence of the injuries suffered by defendant to her neck and wrists. The judge acknowledged the photographic evidence[4] of the injuries, but found it not dispositive of defendant's assertion that plaintiff had choked her. Indeed, the trial judge provided detailed reasoning why "the slight neck bruising" suffered by defendant was actually evidence of plaintiff defending himself against defendant, who wielded two knives during the attack. The judge ultimately found the photographic evidence of defendant's injuries "inconclusive." Defendant's arguments on appeal represent a disagreement with the conclusions drawn by the trial judge. However, given the deference we owe the trial judge's factual findings, there is no basis for us to reach a different conclusion because the record allegedly supports the judge's findings.

We also reject defendant's argument the trial judge was pre-disposed against her because the judge maintained custody of the

---

[4] We note defendant's counsel did not provide the photographs in the appendices on appeal.

A-0025-17T1

parties' son with plaintiff pending the final outcome of the matter. As a general proposition, a judge hearing an application for a TRO is empowered to grant ex parte relief, including an award of temporary custody pending the FRO hearing. N.J.S.A. 2C:25-28(g). Defendant demonstrated no link between the trial judge's exercise of authority to grant temporary relief under the TRO, and the decision to grant plaintiff an FRO.

Moreover, the record does not support defendant's claim the trial judge was biased because she had reviewed a DCPP report before the trial. In fact, following the entry of the FRO in favor of plaintiff, the judge addressed the other non-restraint-related dispositive relief sought by the parties, namely, defendant's request for parenting time. In doing so, the trial judge entered a protective order before reviewing the DCPP report with the parties on the record and addressing parenting time. Significantly, the judge stated "I'm just reading [the DCPP report] for the first time now . . . ." Therefore, the record does not evidence the trial judge was pre-disposed against defendant by virtue of the DCPP report and this claim lacks merit.

Finally, we reject defendant's assertion the trial judge should have concluded plaintiff engaged in criminal mischief by breaking down the window adjacent to the foyer during the incident. The judge rejected defendant's theory of the sequence of events,

including defendant's claim plaintiff had re-entered the residence in this fashion, and we have not been persuaded otherwise. More importantly, criminal mischief was not pled in defendant's TRO, and defendant did not argue grounds for entry of an FRO on such a basis to allow the trial judge to afford plaintiff due process and the ability to prepare a defense. Our Supreme Court has stated:

> [D]ue process forbids the trial court "to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." [S]ee L.D. v. W.D., 327 N.J. Super. 1, 4 (App. Div. 1999) (explaining that "it is clearly improper to base a finding of domestic violence upon acts or a course of conduct not even mentioned in the complaint.").
>
> [J.D. v. M.D.F., 207 N.J. 458, 478-79 (2011) (citation omitted).]

For these reasons, we reject this argument as grounds for reversal.

In sum, the trial judge's findings of fact and conclusions of law are supported by the substantial, adequate, and credible evidence in the record. Applying the governing deferential standard of review, we must sustain those determinations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0025-17T1