# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0635-18T2
                A-0636-18T2

J.M.,

      Plaintiff-Appellant,

v.

M.M.,

      Defendant-Respondent.

_____

M.M.,

      Plaintiff-Respondent,

v.

J.M.,

      Defendant-Appellant.

_____

Argued August 27, 2019 – Decided September 4, 2019

Before Judges Gilson and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket Nos. FV-13-0221-19 and FV-13-0218-19.

Michael Jude Gunteski argued the cause for appellant J.M. (Law Offices Darren C. O'Toole, LLC, attorneys; Carrie Ayn Smith, of counsel and on the briefs).

Jordan Spencer Gale argued the cause for M.M. (Gale Laughlin LLP, attorneys; Jordan Spencer Gale, on the brief).

PER CURIAM

These are consolidated appeals. In A-0635-18, J.M. appeals from the dismissal of a temporary restraining order (TRO) he obtained against M.M. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. In A-0636-18, J.M. challenges the entry of a final restraining order (FRO) in favor of M.M. We affirm.

We take the following facts from the record. The parties are married and have a young child. In 2013, each party obtained a TRO against the other, both of which were dismissed following a trial. They continued to experience marital difficulties afterwards, but reconciled until the events, which led them to obtain the mutual TROs addressed in these appeals.

On August 7, 2018, M.M. obtained a TRO. Her complaint alleged assault, claiming J.M. threw a clipboard at her during a verbal argument and injured her

the evening of August 6. M.M.'s complaint alleged J.M. punched her in the back of the head and made statements causing her to fear for her life. M.M.'s complaint detailed a history of assault, verbal abuse, and harassment by J.M., including incidents in 2012, 2013 (two), and 2017 (two).

On August 8, 2018, J.M. obtained a TRO. His complaint alleged M.M. had committed assault, harassment, and criminal coercion. Specifically, J.M. alleged that on August 2, 2018, M.M. had threatened to contact police and make false domestic violence allegations against him if he did not complete her immigration petition. His complaint also alleged she scratched J.M. during an argument, and during this and prior incidents, she stated "in my country we don't talk, we put the gun to the head, that's how we fix [matters]."

J.M.'s complaint also alleged that during an argument on August 6, 2018, M.M. hid business and personal documents that J.M. needed for a landlord/tenant proceeding he filed against a tenant. J.M. alleged M.M. "smashed [his] left thumb with a big metal spoon causing bleeding under the nail" during the argument. J.M. alleged M.M. repeated her threats to call the police with false domestic violence accusations if he did not complete her immigration petition and that she "repeatedly smacks [him] in the genitals causing pain."

A-0635-18T2

At the FRO hearing, M.M. adduced the testimony of Marlboro Township Police Officer Aaron Murdock, and the parties' upstairs neighbor and tenant F.S. Both parties also testified.

Officer Murdock testified he and another officer responded to the parties' residence on August 7, due to the report of a verbal dispute. He stated police had responded to several calls to the residence during the preceding weeks. J.M. claimed the argument was because M.M. had allowed the family dog to escape the house.

When Officer Murdock spoke with M.M., he noticed a scratch on her back, which she said occurred from J.M. throwing a clipboard at her. She also explained J.M. had hit her in the back of the head earlier in the day while she was getting a drink for him from the refrigerator. The officer observed M.M. was crying and fearful of J.M.

F.S. resided upstairs from the parties and testified she overheard arguments between the parties on July 30, and August 7, 2018, which she characterized as "not settling and disturbing." She testified the arguments involved banging and were "one[-]sided" in that J.M. verbally assailed M.M. and called her a "cunt" with no response by M.M. A recording of the August 7

argument was played for the trial judge and corroborated F.S.'s testimony. In it, J.M. screamed loudly at M.M. and called her a "jerk off" and a "stupid fuck."

M.M. testified J.M. called her "son of a bitch," "[m]other fucker," "[p]iece of shit," "[f]ucking cunt," and hit her with a clipboard in the right shoulder during an argument on August 6. A photo of her shoulder bearing what the judge described as a "linear red mark approximately one inch long" was adduced in evidence and corroborated her testimony. She also claimed J.M. threatened to kill her if she called the police.

According to M.M.'s testimony, the verbal and physical abuse continued when J.M. returned from work the evening of August 7. She testified that as she was retrieving a drink for J.M. from the refrigerator, he pulled her hair and hit her "very hard" in the back of the head with a closed fist. M.M. left the house with the dog in hopes J.M. would calm down and returned to find the police, who responded to a call from an upstairs neighbor.

M.M.'s testimony also detailed a history of domestic violence, including an incident in July 2017, where during an argument, J.M. had punched her with a closed fist. M.M.'s testimony was corroborated by a photograph of a bruise above her left breast adduced in evidence. M.M. also testified J.M. verbally abused her and injured her foot when he threw a flashlight at her during another

incident in October 2017. She testified he threatened to kill her if she contacted the police. A photograph of M.M.'s injured foot was placed into evidence.

During his testimony, J.M. explained he and M.M. had been in court on August 6 to file an eviction complaint against F.S. He claimed after they returned from court, he was searching for documents relating to the tenancy matter and M.M. refused to help him. When J.M. found the documents and confronted M.M. with them, she claimed she never saw them and then struck his thumb with a spoon, which caused him to throw the clipboard and accidentally hit her. Afterwards, J.M. claimed the parties discussed M.M.'s immigration status and she threatened him with false police reports if he failed to "follow through" on her immigration petition. J.M.'s testimony repeated his allegations regarding the August 6 incident as set forth in his complaint.

J.M. also testified to an alleged history of domestic violence. Specifically, he claimed M.M. had scratched his face, arm, and chest two weeks prior to August 6, and she deleted photos he had taken of his injuries. J.M. claimed M.M. grabbed his genitals a few times per week and laughed at him when he told her to stop. He claimed M.M. wakes him up punching and shoving him. He testified she pushed and shoved him during an incident years prior, causing him to cut a finger, which required surgery. He claimed M.M. willfully damaged

the parties' property by cutting a hallway carpet while moving an appliance and allowing the dog to urinate on rose bushes he purchased for her.

The trial judge made oral findings of fact, and issued a detailed written amplification pursuant to Rule 2:5-1(b). He concluded M.M. had testified credibly, and J.M.'s testimony had been inconsistent and lacked credibility. The judge rejected J.M.'s claims that M.M. sought to file false claims with the police against him. The judge noted "[s]he was not anxious to complain to the police[.]"

Regarding the August 7 incident, the judge concluded as follows:

> I find [M.M.]'s testimony on the clipboard injury as well as the injuries to her left breast and left ankle is credible and strongly corroborated by photographs. Conversely, [J.M.]'s testimony that he flung the clipboard reflexively without intent to strike [M.M.] is rejected as completely devoid of credibility. I conclude that [M.M.'s] testimony established an ongoing pattern of verbal and physical assaultive behavior by [J.M.] that has caused her injury.

The judge found F.S.'s recordings

> provided insight, not only into the August 7 incident, but to [M.M.'s] other claims of domestic violence. I was struck, not only by the level of hostility displayed by [J.M.] during the rant, but observed that it was prompted by something as trivial as [M.M.]'s failure to close a door. On the recording [J.M.] can be heard screaming at [M.M.], using [coarse] and offensive language, while [M.M.] is not heard at all. This

7

A-0635-18T2

uncontrolled rage supports [M.M.]'s claim that [J.M.] frequently verbally abuses her with obscenity-laced tirades and she attempts to avoid confrontation, often leaving the house until things cool down, as she did on August 7.

The judge concluded M.M. was in need of an FRO because "[J.M.]'s hostility toward [M.M.] . . . is palpable and disturbing, and he is likely to continue to abuse her if a[n] FRO is not issued." The judge concluded M.M. had proven her right to an FRO on grounds of harassment.

The judge reached the opposite conclusion regarding the claims in J.M.'s complaint. He concluded J.M. had not proven a predicate act of domestic violence by M.M. because he told police the scratches on his body "were sustained during his work on a bread truck. Yet [J.M.] claimed in his domestic violence complaint filed less than twenty-four hours later, that . . . during an argument [M.M.] scratched [J.M.]" The judge also found J.M.'s claims relating to the dog leaving the house and urinating on rose bushes, and the damage M.M. allegedly did to the carpeting, were not domestic violence and were not supported by credible evidence.

The judge entered an FRO in M.M.'s favor and dismissed J.M.'s complaint. These appeals followed.

8

# I.

The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974). Deference is especially appropriate "when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). Because a trial court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)) (alterations in original). Therefore, an appellate court should not disturb the "factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms, 65 N.J. at 484. The appellate court should "exercise its original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." Ibid.

Furthermore, matrimonial courts possess special expertise in the field of domestic relations. See Brennan [v. Orban], 145 N.J. [282,] 300-01 (1996). . . .

Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding. As noted previously by this Court, the Legislature "has reposed grave responsibilities on Family Part judges to ensure the safety and well-being of women and children in our society. . . . We are confident that they can successfully

9

A-0635-18T2

balance the interests of society in deterring the evils of domestic violence and caring for families."  Brennan, 145 N.J. at 304-05.

[Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)].

On appeal, J.M. argues he was denied due process because the judge found a predicate act of harassment, while M.M.'s complaint only alleged assault.  He argues the judge considered hearsay from police reports by officers who did not testify, which the judge used as evidence of a prior, inconsistent statement relating to the scratches he claimed M.M. inflicted upon him.  He argues the judge's findings under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), that an FRO was necessary to protect M.M. were erroneous.

As to J.M.'s complaint, he argues the judge unfairly limited his testimony regarding the incidents of alleged harassment.  He asserts the dismissal of his complaint was error because the court made no findings on the predicate acts alleged in it.

II.

We reject J.M.'s challenges and affirm largely for the reasons set forth in the trial judge's decision.  We add the following comments.

As a general proposition

due process forbids the trial court to convert a hearing on a complaint alleging one act of domestic violence

A-0635-18T2

> into a hearing on other acts of domestic violence which are not even alleged in the complaint. . . . [S]ee L.D. v. W.D., 327 N.J. Super. 1, 4 (App. Div. 1999) (explaining that "it is clearly improper to base a finding of domestic violence upon acts or a course of conduct not even mentioned in the complaint.").
>
> [J.D. v. M.D.F., 207 N.J. 458, 478-79 (2011) (citation omitted).]

J.M. is correct the judge erred when he found J.M. committed harassment where it was not alleged in M.M.'s complaint. However, J.M. was not deprived of due process because the record does not demonstrate that the trial was converted into a cause of action for harassment. The record shows the fundamental issue was whether either party had committed assault as defined by the relevant statute, and "[a]ttempt[ed] to cause or purposely, knowingly, or recklessly cause[d] bodily injury to another; or . . . [a]ttempt[ed] by physical menace to put another in fear of imminent serious bodily injury." N.J.S.A. 2C:12-1(a)(1), (3). Indeed, the testimony, photographic and documentary evidence adduced, and the summation by the parties' trial counsel centered on whether the parties had assaulted or threatened bodily harm to the other. Moreover, the trial judge's findings were that J.M. had purposely injured M.M. with the clipboard and by punching her, which met the statutory definition for assault.

Therefore, the judge's decision erroneously mentioning harassment was harmless error. R. 2:10-2. J.M. prosecuted and defended the case on the basis of assault and we disregard the alleged error because it was not "of such a nature as to have been clearly capable of producing an unjust result[.]" Ibid.

We further reject J.M.'s assertion that the judge could not admit his statement to police regarding the source of the scratches on his arms as a prior inconsistent statement. As the judge noted, these statements were admissible pursuant to evidence Rule 803(a)(1), a clear hearsay exception. Moreover, J.M. did not challenge the authenticity of the report containing his inconsistent statement requiring the officer who prepared it to testify.

J.M.'s challenges to the judge's Silver findings are unpersuasive. The entry of an FRO requires the trial court to make certain findings. See Silver, 387 N.J. Super. at 125-27. The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim

from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D., 207 N.J. at 475-76. The judge predicated his Silver findings not just on M.M.'s establishment of the predicate acts of assault, but on the history of domestic violence, which F.S.'s recording corroborated. The judge's Silver findings are unassailable.

The trial judge did not err when he curtailed J.M.'s testimony regarding his alleged claims of domestic violence. Permitting the dog to urinate on rose bushes and destroying a carpet by dragging a heavy object across it at best constituted "ordinary domestic contretemps," rather than instances of "serious abuse between spouses" contemplated by the PDVA. Peranio v. Peranio, 280 N.J. Super. 47, 53, 57 (App. Div. 1995). For these reasons, the trial judge did not err and properly exercised his authority to limit J.M.'s testimony. N.J.R.E. 611(a)(1) and (2). To the extent we have not addressed other arguments raised by J.M., it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-0635-18T2