# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3576-18T1

P.C.,

    Plaintiff-Respondent,

v.

R.C.,

    Defendant-Appellant.

_____

        Submitted March 4, 2020 – Decided March 17, 2020

        Before Judges Mayer and Enright.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-2725-19.

        Chinemerem Nwankire Njoku, attorney for appellant.

        Respondent has not filed a brief.

PER CURIAM

Defendant R.C.[1] appeals from a March 25, 2019 final restraining order (FRO) entered in favor of plaintiff P.C. pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm, substantially for the reasons set forth in Judge Carolyn A. Murray's March 25, 2019 comprehensive and cogent oral decision.

The parties were married in 2008 and have four children together. On March 8, 2019, plaintiff obtained a temporary restraining order (TRO) against defendant based on the allegation of terroristic threats within the meaning of N.J.S.A. 2C:12-3(b). Specifically, plaintiff alleged defendant threatened to kill her on the morning of March 8. Her complaint also confirmed defendant had been arrested in the past for assaulting her and threatened to kill her on prior occasions. The FRO hearing was held on March 25, 2019, during which both parties appeared and testified without counsel. At the conclusion of the hearing, Judge Murray rendered findings of fact and issued an FRO against defendant.

On appeal, defendant argues:

> POINT I: THE COURT ERRED IN ENTERING A RESTRAINING ORDER AGAINST [DEFENDANT] BASED ON RECORDED CELL PHONE VIDEO IN WHICH THE PARTIES WERE SPEAKING A FOREIGN LANGUAGE THAT CLEARLY REQUIRED THE AID[] OF AN INTERPRETER TO

---

[1] We refer to the parties by initials to protect their privacy. R. 1:38-3(d)(12).

A-3576-18T1

KNOW WHAT WAS BEING SAID ON THE RECORDED VIDEO.

POINT II: THE COURT ERRED IN ENTERING A RESTRAINING ORDER AGAINST [DEFENDANT] BECAUSE [PLAINTIFF] DID NOT PROVIDE ANY EVIDENCE TO SUBSTANTIATE HER CLAIMS THAT [HE] THREATENED HER AND THAT [HE] HAD ENGAGED IN DOMESTIC VIOLENCE AGAINST HER IN THE PAST.

We find insufficient merit in these arguments to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

Our standard of review requires deference to findings of fact that are based on substantial, credible evidence, and this is particularly true when, as here, "the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons of J.W.D., 149 N.J. 108, 117 (1997)). Such findings become binding on appeal because it is the trial judge who "sees and observes the witnesses," thereby possessing "a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)). We, therefore, will not disturb a judge's factual findings unless convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of

Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). Guided by these principles, we find defendant's argument that plaintiff failed to substantiate her claims of domestic violence unavailing.

During the FRO hearing, plaintiff confirmed that on the morning of March 8, 2019, defendant threatened to kill her and to "deal with [her]." Further, plaintiff testified that when the parties were in Nigeria in 2016, defendant choked her. She also testified that in 2017, she was admitted to Newark Beth Israel Hospital because defendant attempted to strangle her, and she collapsed later in the day. When she woke up at the hospital, police interviewed her and arrested defendant.

"A defendant's prior abusive acts should be considered 'regardless of whether those acts have been the subject of a domestic violence adjudication.'" Pazienza v. Camarata, 381 N.J. Super 173, 183 (App. Div. 2005) (quoting Cesare, 154 N.J. at 405). Additionally, whether a restraining order should issue depends on the seriousness of the predicate offense, "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse," and "whether immediate danger to

the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)); see Cesare, 154 N.J. at 402.

Here, Judge Murray found plaintiff credibly testified that defendant perpetrated significant physical attacks against plaintiff before he threatened on March 8, 2019 that he would "kill her" and "deal with her." The judge determined defendant's statements constituted terroristic threats within the meaning of N.J.S.A. 2C:12-3(b). We find no principled reason for second-guessing these findings.

We also disagree with defendant's contention that Judge Murray erred by considering the cellphone recording plaintiff produced in court without the benefit of a translator. While interpreters are to be used when failure to do so could negatively impact a litigant's rights, Daoud v. Mohommad, 402 N.J. Super. 57 (App. Div. 2008), Standard 4.4's Best Practices section, subsection (b), of the New Jersey Judiciary Language Access Plan provides: "[I]n certain circumstances a judge may need to assess a recording or text message in a language other than English without the benefit of prior transcription and translation."

Although Judge Murray considered plaintiff's cellphone recording, our review of the record satisfies us that the judge did not improperly rely on

plaintiff's interpretation of what was said on the recording. Instead, after giving each party an opportunity to explain what occurred in the recording, the judge independently found defendant was seen "ranting and raving" at his children on the recording. She concluded:

> [A]t least from what I can glean . . . . [t]he children appear to be cooperative and . . . there doesn't seem to be anything that the children are doing that explain[s] why the defendant is so agitated. And he appears to be speaking to his wife and at one point gesticulates so broadly in her direction that the camera is struck. This . . . struck me as consistent with what the plaintiff had said about him lashing out at her with his hands a week before March 8[] and her blocking the hit, if you will, with her forearm.

Judge Murray added that the recording displayed "an example of the type of interactions that go on in the household." We are satisfied the judge did not abuse her discretion by considering this recording for the limited purpose of corroborating plaintiff's credible testimony about the defendant's abusive behavior.

After a careful examination of the record, we also are satisfied that the evidence Judge Murray considered overwhelmingly supported her determination that plaintiff was in need of an FRO to protect her from further domestic violence. Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

6