# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1447-23

L.G.,[1]

    Plaintiff-Respondent,

v.

J.B.M.,

    Defendant-Appellant.

_____

> Submitted November 14, 2024 – Decided December 19, 2024
>
> Before Judges Rose and DeAlmeida.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FV-16-1499-22.
>
> Bastarrika, Soto, Gonzalez & Somohano, LLP, attorneys for appellant (Jane M. Personette, of counsel and on the brief).
>
> Respondent has not filed a brief.

---

[1] We use initials to preserve the confidentiality of court records concerning domestic violence. R. 1:38-3(d)(9).

PER CURIAM

Defendant J.B.M. appeals from a December 4, 2023 final restraining order (FRO) entered against him by the Family Part pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We reverse.

I.

On February 14, 2022, plaintiff L.G. filed a domestic violence complaint seeking entry of an FRO against defendant. Plaintiff alleged she and defendant were in a dating relationship when, on February 28, 2021, defendant committed the predicate acts of assault, N.J.S.A. 2C:12-1, and harassment, N.J.S.A. 2C:33-4, by grabbing her by the neck and repeatedly slapping her in the face. She also alleged that: (1) on July 3, 2021, defendant abruptly stopped his vehicle in front of plaintiff and her mother as they were "walking down [the] street"; (2) on October 28, 2021, plaintiff received a "missed call" on Facebook from defendant's friend and, a week later, received a "friend request" from that person on Facebook; and (3) on February 13, 2022, plaintiff viewed a video on WhatsApp of defendant at the home of a resident of plaintiff's apartment building who is a friend of both plaintiff and defendant. In the complaint, plaintiff answered "no" to the question of whether there were prior acts of domestic violence.

A-1447-23

On February 15, 2022, a Superior Court judge issued a temporary restraining order (TRO) against defendant. The TRO was served on defendant twenty months later, on October 30, 2023. The reason for the delay in service is not apparent from the record.

A trial was held on December 4, 2023. Plaintiff testified that she and defendant were in a dating relationship and lived together for three years. They do not have children together. According to plaintiff, on an unspecified date in 2019, defendant slapped her in the face three times after he searched through her cellphone for evidence of her infidelity. The 2019 assault is not alleged in the complaint. Plaintiff testified that the parties' relationship ended after the 2019 assault. However, she later testified that she and defendant had an "on and off" relationship after the 2019 assault.

Plaintiff testified that on February 28, 2021, she went to defendant's home and he pushed her to the floor, got on top of her, and straddled her. According to plaintiff, while defendant was on top of her, he repeatedly struck her in the face with an open hand and attempted to choke her with both hands. Plaintiff testified that the incident left her with bruises on her back, legs, neck, and face.

With respect to the July 3, 2021 incident, plaintiff testified she and her mother were about to cross a street on foot when defendant approached in his

3

car.  According to plaintiff, defendant stepped on the brake and appeared to want to talk to her.  Plaintiff and her mother had to move out of the way of the car.  No words were exchanged and plaintiff and her mother immediately walked away.

Plaintiff testified that she waited a year after the February 28, 2021 incident to file her complaint because shortly after the incident an unnamed police officer advised her "to let things go."  Four months later, "a lady" told plaintiff she could file a request for a restraining order.  Plaintiff did not explain why she waited an additional eight months to file the complaint.[2]

Defendant testified that his relationship with plaintiff ended after she assaulted him in front of his children, but he did not identify the date on which this occurred.  According to defendant, after he ended his relationship with plaintiff, he started a relationship with a new girlfriend, but plaintiff "kept coming to my house every time she got drunk, coming to my house, trying to beat me up, trying to come back with me."  Defendant testified that on February 28, 2021, plaintiff broke into his house with a credit card and assaulted him.

---

[2]  Plaintiff testified with respect to two events that took place after the TRO was entered and before it was served on defendant.  On September 24, 2022, she saw defendant park his truck at her apartment building, where a friend of defendant also lives.  More than a year later, on October 29, 2023, plaintiff saw defendant's truck near her home.

According to defendant, plaintiff bit him in the arm and on his lip, punched him in the face, scratched him, struck him, and destroyed his belongings.

Defendant testified that he pushed plaintiff away from him after she bit him, which caused her to fall to the floor. He admitted getting on top of her, but testified he did so only to contain her rage while he called the police and did not hit her. After the police arrived, they arrested plaintiff and did not arrest defendant. Plaintiff was charged with assault, but defendant later dropped the charges because he did not want to cause trouble for her. Plaintiff conceded she was arrested and charged with assault after the February 2021 incident and that defendant, who had scratches on his arm, was not arrested.

Defendant denied seeing plaintiff again after February 28, 2021. He denied seeing plaintiff in July 2021 and stopping his car to attempt to speak with her. Defendant also denied striking plaintiff in 2019.

On cross-examination, plaintiff admitted she "thought about" breaking into defendant's home with a credit card on February 28, 2021, but did not need to because his girlfriend opened the door. According to plaintiff, defendant spent the prior night at her house where they were intimate and she wanted to surprise him by breaking in and being present when he came home. She did not expect to find a woman in defendant's home. When asked why a police report

5

stated plaintiff admitted breaking into the apartment, she testified she told the police officer only that she had contemplated breaking into the apartment. Plaintiff testified she confronted defendant verbally about his girlfriend and in response he pushed her to the floor and began assaulting her.

At the conclusion of the testimony, the trial court issued an oral decision. With respect to the predicate act, the court found as follows:

> So this is, unfortunately, a common circumstance where two people give absolutely inconsistent testimony about what happened.
>
> . . . .
>
> What is more likely than not? Given the history here where the defendant in 2019 grabs the cell phone and starts investigating her infidelity, he's [so] upset by her . . . alleged infidelity . . . that he slaps her. So this is someone who puts his stamp on the relationship. You do something that upsets me, physical violence.
>
> Now we come to 2021. You're going to invade my space? Don't you remember the stamp I put on this? Physical violence again. Do I think he was injured? I do. Do I think his injuries were defensive, in other words, the plaintiff defending herself? I think they were.

The court continued:

> I think it's more likely than not that what [plaintiff] is telling me has a stronger ring of truth than what [defendant] is telling me. And it's a very difficult decision but I think it is more likely than not that she

6

goes to the room that night to invite herself to get . . . joy from him . . . and then when she's confronted with the fact that he's with someone else she gets upset [and] berates him to the point where he's got his limit and then he reacts pushing her to the ground and choking her, calling the police while he's on top of her. The fact that she's arrested does not answer the case. It just is what the police chose to do in that moment.

With respect to plaintiff's need for protection from an immediate danger or further abuse, the court found:

In the background of these assaults, this screeching car, violent stop, the abrupt stop is seen a different way. It creates fear. These videos of being at the home, attending inside the home, it's concerning because [plaintiff] has been twice assaulted.

So do I think that this circumstance warrants a restraining order? I do.

On December 4, 2023, the court entered an FRO against defendant.

This appeal followed. Defendant argues the trial court: (1) did not identify the predicate act or acts on which it based entry of the FRO or analyze the statutory elements of any predicate act; (2) did not mention the PDVA or analyze its provisions; (3) failed to engage in the second prong of the analysis set forth in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006); (4) failed to properly weigh the one-year delay between the February 28, 2021 incident and

A-1447-23

the filing of plaintiff's complaint; and (5) did not cite any legal authority or mention the applicable standard of proof in its decision.

## II.

The entry of an FRO requires the trial court to make certain findings. <u>See</u> <u>Ibid.</u> The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." <u>Id.</u> at 125. The court should make this determination "'in light of the previous history of violence between the parties.'" <u>Ibid.</u> (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 402 (1998)). Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)]([7]), to protect the victim from an immediate danger or to prevent further abuse." <u>Id.</u> at 127 (citing N.J.S.A. 2C:25-29(b)); <u>see also</u> <u>J.D. v. M.D.F.</u>, 207 N.J. 458, 476 (2011). This determination requires evaluation of:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;

(4)    The best interests of the victim and any child;

(5)    In determining custody and parenting time the protection of the victim's safety;

(6)    The existence of a verifiable order of protection from another jurisdiction; and

(7)    Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse . . . .

[N.J.S.A. 2C:25-29(a); see also Cesare, 154 N.J. at 401.]

In addition, Rule 1:7-4(a) states that a trial court "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ." "The rule requires specific findings of fact and conclusions of law . . . ." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2025).

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare, 154 N.J. at 411-12). We should not disturb the "'factual findings and legal conclusions of the trial judge

9

unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

We agree with defendant that the trial court failed to make adequate findings of fact and conclusions of law to support entry of the FRO. The trial court's decision did not identify the predicate act or acts on which it based entry of the FRO. Plaintiff alleged defendant committed both assault and harassment. Neither is mentioned in the trial court's decision. The court did not discuss the statutory elements of either offense or find that those elements were proven by a preponderance of the evidence. In the absence of those findings we cannot uphold entry of an FRO.

In addition, the court failed to meaningfully address the second prong of the Silver analysis. The trial court also did not mention or apply the seven

10

factors set forth in N.J.S.A. 2C:25-29(a), or find that an FRO was necessary to protect plaintiff from an immediate danger or to prevent further abuse.

The absence of these findings is significant in light of undisputed facts in the record. Nearly three years had passed between the February 28, 2021 incident, which is the latest act of domestic violence identified by the court, and entry of the FRO. The parties' relationship had long since ended. They do not reside together and do not have children in common. There is no evidence in the record suggesting the parties must interact for any reason in the future. Nothing suggests defendant attempted to contact plaintiff after he was served with the TRO. In addition, the incidents identified by plaintiff as taking place after February 28, 2021, either do not involve an attempt by defendant to contact plaintiff or, in the case of the car stopping, do not constitute a predicate act of domestic violence.[3] The need for protection from an immediate danger or further abuse is not established in the record.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Although the trial court found defendant's car "screeched" to a stop, the record does not support that finding. Plaintiff testified that as she and her mother were about to cross the street defendant "noticed it was me and he step (sic) on the brake" and "we had to move away because he was really close to us with the car." Nothing in the record suggests the incident, which defendant denies took place, was anything more than a chance encounter and a successful effort by a driver not to strike two women who stepped into traffic to cross the street.

11                                              A-1447-23