# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2014-19T2

T.L.R.,

    Plaintiff-Respondent,

v.

M.R.,

    Defendant-Appellant.

_____

        Submitted January 13, 2021 – Decided February 3, 2021

        Before Judges Geiger and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FV-01-0498-20.

        M.R., appellant pro se.

        Respondent has not filed a brief.

PER CURIAM

Defendant M.R.[1] appeals from a November 13, 2019 final restraining order (FRO) entered in favor of plaintiff T.L.R., pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. For the reasons that follow, we vacate the FRO and remand for further proceedings.

We discern these facts from the November 13, 2019 FRO hearing and the limited record on appeal.[2] Plaintiff filed a complaint seeking a temporary restraining order (TRO) against defendant under the Act. The only witnesses who testified at the FRO hearing were plaintiff and defendant.

The parties were divorced in May 2018 and had a child together, who was then nine years old. The parties had previously agreed to a September 2017 mutual civil restraining order that provided: "the parties agree they will have no contact with each other except as provided herein. The parties may have written contact regarding the child, email, et cetera. [Plaintiff] may continue to act as a supervisor. Neither party will go to the other party's home." Defendant was also permitted to contact their daughter "by phone or text daily." Plaintiff alleged defendant was harassing her by "constantly" violating the civil

---

[1] We refer to the parties by initial to protect their identities. R. 1:38-3(d)(9).

[2] Defendant did not include the temporary restraining order, the civil restraining order, or any of the emails or text messages discussed during the trial in his appendix.

A-2014-19T2

restraining order through text messages. Plaintiff explained that defendant was only permitted to communicate with her regarding their child. Plaintiff testified that defendant continued to communicate with her by texting and calling her despite repeatedly telling him to stop and also came to her "house unannounced when he's not supposed to." Plaintiff presented copies of the text messages to the court.

Some of the communications related to defendant's medication. In response, defendant testified that plaintiff had possession of a bottle of his medication, which plaintiff denied.

Defendant admitted that plaintiff told him to stop texting her. He further admitted texting plaintiff after being told not to do so. Plaintiff then testified that defendant was "[c]onstantly texting me and doing stuff" unrelated to their daughter.

Plaintiff also alleged that defendant made false reports of child abuse against her, and verbally threatened to hurt her. She testified that she was afraid of defendant because of his threats, including a threat to kick down her door. She stated that their daughter is also afraid of defendant and "freaks out" when she sees his truck.

 A-2014-19T2

The judge began his oral decision by noting that plaintiff alleged the predicate act of harassment, N.J.S.A. 2C:33-4. He focused on subsection (a), which prohibits "[m]ak[ing], or caus[ing] to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2C:33-4(a).

The judge found that the parties had been to court on three dates in mid-September "and in spite of the civil restraint there are these little acts of defendant still coming back at plaintiff, . . . and it's because plaintiff is trying to collect child support, unpaid obligations that defendant's exploiting this civil restraint." The "contacts and responses . . . from defendant to plaintiff are done to annoy her." The judge used the unnecessary communications regarding defendant's medication as an example. "It was done specifically to annoy her" and constituted a "subtle" form of harassment that was "controlling." The judge determined that defendant used the "opportunity" of contacting plaintiff about the medication "as a subterfuge" to continuing communications with her. Defendant did this while knowing there was a civil restraint and "he's not supposed to be contacting her." The judge described defendant as "an

4

opportunistic person" who was "taking an opportunity" to exploit "what he believes is a loophole" to engage in annoying behavior.

The judge entered a FRO in favor of plaintiff. On appeal, defendant argues that the trial court erred by finding he committed the predicate act of harassment.

When reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We do not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The Act defines domestic violence by referring to a list of predicate offenses found within the New Jersey Criminal Code. J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (citing N.J.S.A. 2C:25-19(a)). "[T]he commission of a predicate act, if the plaintiff meets the definition of a 'victim of domestic violence,' N.J.S.A. 2C:25-19(d), constitutes domestic violence . . . ." Ibid. Harassment is a predicate offense under the Act. N.J.S.A. 2C:25-19(a)(13).

The entry of a final restraining order requires the trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, the court also must determine whether a FRO is required to protect the party seeking restraints from future acts or threats of domestic violence. Id. at 126-27. That means "there [must] be a finding that 'relief is necessary to prevent further abuse.'" J.D., 207 N.J. at 476 (quoting N.J.S.A. 2C:25-29(b)).

Here, the judge concluded defendant committed harassment. A person commits the petty disorderly persons offense of harassment if he, "with purpose to harass another," makes communications "in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2C:33-4. In

evaluating a defendant's intent, a judge is entitled to use "[c]ommon sense and experience . . . ." State v. Hoffman, 149 N.J. 564, 577 (1997). Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be relevant to and support an inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006); see also H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) ("'[A] purpose to harass may be inferred from' . . . common sense and experience." (quoting Hoffman, 49 N.J. at 577)).

Implicit in the judge's decision was that the annoying communications were done with a purpose to harass. We are satisfied the record supports the trial court's factual findings, and legal conclusions. There was sufficient credible evidence that defendant committed the predicate act of harassment. The court obviously found plaintiff's testimony was credible. We defer to this credibility determination. See Cesare, 154 N.J. at 412 (citations omitted).

"The second-prong of Silver requires the trial court to evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -(6) to determine whether an FRO should be issued." A.M.C. v. P.B., 447 N.J. Super. 402, 416 (App. Div. 2016).

Here, there were no prior domestic violence proceedings, but the civil restraining order prohibited communications unrelated to the child. The trial

court did not evaluate the statutory factors and made no express findings as to whether an FRO is necessary to provide protection for "the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. Consequently, we are constrained to vacate the FRO, reinstate the temporary restraining order, and remand the matter for a further hearing that focuses on the second prong of the Silver analysis. Specifically, having found defendant committed the predicate act of harassment, the trial court shall "determine whether a domestic violence restraining order [was] necessary to protect plaintiff from immediate danger or further acts of domestic violence." Id. at 128.

Finally, we note that defendant asserts in his brief that plaintiff died on June 15, 2020. Defendant has provided no verification of her death. He may have a basis to seek relief in the trial court if that unsupported allegation is true.

Vacated and remanded for further proceeding consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2014-19T2