**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0840-19

J.E.,

    Plaintiff-Appellant,

v.

S.Q.,

    Defendant-Respondent.

_____

Submitted January 19, 2021 – Decided February 8, 2021

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-0590-20.

Law Offices of Melissa Rosenblum, LLC, attorneys for appellant (Melissa Rosenblum, on the brief).

Klineburger and Nussey, attorneys for respondent (Richard F. Klineburger, III and Carolyn G. Labin, on the brief).

PER CURIAM

Plaintiff J.E.[1] appeals from the September 11, 2019 final restraining order (FRO) entered against him by the Family Part pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, and the court's September 11, 2019 order dismissing his application for an FRO against defendant S.Q. We vacate the FRO entered against J.E. and affirm the dismissal of his application for an FRO against S.Q.

I.

The following facts are derived from the record. S.Q. is the adult child of J.E.'s deceased wife. On the relevant dates, S.Q. was living with J.E. and his minor children. On August 21, 2019, J.E. filed a domestic violence complaint alleging S.Q. harassed him during and after an argument about her use of his car. He alleged that the harassment included text messages sent from S.Q. to J.E. and his minor child. The trial court entered a temporary restraining order (TRO) against S.Q.

Also on August 21, 2019, S.Q. filed a domestic violence complaint alleging J.E. harassed her during the argument described in J.E.'s complaint. Both complaints included allegations of physical assaults, but neither alleged

---

[1] We use initials to preserve the confidentiality of court records concerning domestic violence. R. 1:38-3(d)(9).

assault as a predicate act of domestic violence. The court entered a TRO against J.E.

Both parties testified at trial. They acknowledged that they had an argument in the early morning hours about S.Q.'s use of J.E.'s car. They agree that the argument began with an exchange of texts and that J.E. approached S.Q.'s room, where he shouted at her through the closed door. According to J.E., he opened the door and approached S.Q., who began screaming, kicking him, and accusing him of being intoxicated. J.E. also testified that S.Q. began screaming at his minor daughter. He denied striking S.Q. and testified that after the argument, S.Q. texted his daughter and said the daughter was in danger because J.E. has substance abuse problems.

On cross-examination, J.E. admitted that he surreptitiously placed a tracking device in S.Q.'s car in the months prior to the argument. He testified that he believed he was entitled to keep track of S.Q.'s use of the car because he co-signed a loan to secure the funds to purchase the vehicle. S.Q.'s vehicle was not available on the morning of the argument because it was being repaired after an accident. J.E. admitted that he gave S.Q. permission to use his car and did not tell her to return the vehicle before a specified time.

A-0840-19

According to S.Q., on the morning of the argument when J.E. texted her asking for her whereabouts, she was already home. She testified that J.E. sent her a text telling her to use a ride service in the future instead of borrowing his car. According to S.Q., J.E. began banging on her bedroom door, entered her room, and repeatedly struck her in the face. S.Q. testified that J.E. dragged her out of her bed by her legs and arms and slammed her against a wall. She testified that she lost two fingernails in the struggle before she could escape the house and call the police. During her testimony, S.Q.'s counsel presented her with what she described as photographs of her injuries. The photographs, however, were not marked as exhibits or admitted into evidence.[2]

According to S.Q., J.E. used the tracking device to monitor her movements, particularly with respect to a man with whom she then had a romantic relationship. The man was J.E.'s coworker. S.Q. testified that when J.E. was tracking her movements, he would call the man to harass and threaten

---

[2] Although S.Q.'s appendix includes grainy copies of photographs, because of the trial court's failure to mark and admit the photographs used at trial we have no assurance that the copies in the appendix are of the photographs shown to S.Q. In addition, S.Q.'s appendix includes copies of a number of text messages between the parties. While counsel referred to the content of text messages during trial, copies of communications between the parties were not marked or admitted as evidence. In fact, the trial court did not mark or admit any evidence. We have not reviewed the text messages in S.Q.'s appendix and rely only on the trial testimony.

4

him whenever he was with S.Q. This harassment, S.Q. testified, caused the man to resign from his employment to avoid J.E. S.Q. testified that J.E. was developing an obsession with her because she resembled her deceased mother.

S.Q. testified that after the argument she moved out of J.E.'s house and had no intention of returning. When asked why she believed she was in need of protection from future acts of domestic violence, S.Q. mentioned J.E.'s controlling behavior with her former boyfriend and what she described as his habit of getting intoxicated on a daily basis. When asked why he felt the need for an FRO, J.E. testified, "I don't know what she is going to do." He later admitted that he had changed the locks on his house and was in sole possession of the keys to his car.

The trial court issued an oral opinion. The court concluded that J.E. engaged in the predicate act of harassment against S.Q. through an offensive touching. See N.J.S.A. 2C:33-4(b). In reaching this conclusion, the court relied on the photographs that were not admitted as evidence and, apparently, what it determined to be S.Q.'s credible testimony. The court also found that J.E. had a history of harassing S.Q., as evidenced by his placement of the tracking device.

With respect to S.Q.'s need for protection from future acts of domestic violence, the court found:

A-0840-19

Now, the question is, is there a potential problem in the future? The level of control, the type of control, the type of action that the Court finds established by [S.Q.] that the Court is concerned that the interference in her life could very well continue. There is a relationship between three children and [S.Q.], they're half siblings.

Now, the defendant may not [sic] and [J.E.] could prevent these children of his to see [S.Q.], that could very well occur. But, nevertheless, the possibility of future action does exist.

I'm satisfied that the type of activity here by [J.E.] is such that the problem could very well continue. The problem did exist. The control behavior is shown here with the tracking device. The communication that had been established here is offensive and the Court will grant the restraining order for [S.Q.]

The court denied J.E.'s request for an FRO. The entirety of the court's opinion on this point is as follows:

As far as [J.E.'s] restraining order against [S.Q.], I'm going to deny it. I don't see that there is a basis here. He wanted her to leave and, then, he turns around and continues to loan her a vehicle, expecting her to stay. So what occurs is a problem, but I'm not going to grant the other side's restraining order. So that will be denied.

On September 11, 2019, the court entered an FRO against J.E. and an order dismissing J.E.'s complaint and the TRO entered against S.Q.

This appeal followed. J.E. raises the following arguments for our consideration.

6

POINT I

THE TRIAL COURT ERRED AS A MATTER OF LAW, IN RULING THAT PLAINTIFF . . . HAD COMMITTED THE PREDICATE ACT OF HARASSMENT AND A FINAL RESTRAINING ORDER WAS NECESSARY TO PROTECT DEFENDANT FROM IMMEDIATE DANGER OR FUTURE ACTS OF DOMESTIC VIOLENCE. THE TRIAL COURT'S RULING SHOULD BE REVERSED, THE FRO SHOULD BE VACATED, AND [THE] FINAL RESTRAINING ORDER ENTERED SHOULD BE DISMISSED.

A. [J.E.]'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT INCORRECTLY FOUND THE PREDICATE ACT OF HARASSMENT WITHOUT SUFFICIENT EVIDENCE AND/OR NOTICE PURSUANT TO J.D. V. M.D.F., 207 N.J. 458 (2011).

B. [J.E.]'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT RELIED ON FACTS NOT MENTIONED IN THE COMPLAINT AND/OR TEMPORARY RESTRAINING ORDER, AND THEREFORE, THE TRIAL COURT INCORRECTLY CONCLUDED THAT [S.Q.] WAS IN NEED OF A FINAL RESTRAINING ORDER.

C. THE TRIAL COURT INCORRECTLY GRANTED, AS A MATTER OF LAW, A FINAL RESTRAINING ORDER BECAUSE UNDER THE CIRCUMSTANCES OF THIS CASE, THE CONDUCT DID NOT FALL WITHIN THE PURVIEW OF THE DOMESTIC VIOLENCE ACT.

POINT II

THE TRIAL COURT'S DISMISSAL OF
PLAINTIFF['S] TRO WAS WRONG AS A MATTER
OF LAW.

A. THE TRIAL COURT DISMISSED PLAINTIFF'S
TRO AGAINST [S.Q.] WITHOUT CREATING A
FULL AND COMPLETE RECORD AND FAILED TO
APPLY THE PROPER LAW.

B. THE TRIAL COURT VIOLATED [J.E.]'S DUE
PROCESS RIGHTS WHEN IT PREVENTED HIS
TEENAGE CHILDREN FROM TESTIFYING FULLY
REGARDING THE PREDICATE ACT AND NEED
FOR A FINAL RESTRAINING ORDER.

## II.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We should not disturb the "'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (alteration in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence

is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The entry of an FRO requires the trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. The court should make this determination "'in light of the previous history of violence between the parties.'" Ibid. (quoting Cesare, 154 N.J. at 402). Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011). This determination requires evaluation of:

> (1)  The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2)  The existence of immediate danger to person or property;

(3)     The financial circumstances of the plaintiff and defendant;

(4)     The best interest of the victim and any child;

(5)     In determining custody and parenting time the protection of the victim's safety; and

(6)     The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a); see also Cesare, 154 N.J. at 401.]

We are hampered in our review of the record by the trial court's failure to mark and admit documentary evidence about which the witnesses were questioned.  In addition, the trial court's findings of fact and conclusions of law, particularly with respect to the dismissal of J.E.'s complaint, are sparse.

However, after having carefully reviewed the record in light of the relevant legal precedents, we are satisfied that neither party established the second prong of the Silver analysis.  It is clear from the record that S.Q. has moved out of J.E.'s home and has no intention of returning.  She does not have keys to his house or car.  The two are not related and there is no evidence in the record that they have a need or intention to cross paths in the future.  While S.Q. has a half-sibling relationship with J.E.'s teenage children, the record contains no evidence that J.E. has ever interfered with the children spending time with

S.Q. or that it would be necessary for S.Q. to have contact with J.E. in order to have contact with her half-siblings. The only testimony with respect to the relationship among the siblings is that of J.E.'s teenage daughter, who testified that she preferred S.Q. to move out of the family home. S.Q. stated nothing more than a vague fear that J.E. was developing an obsession with her as a basis for the need for protection from future acts of domestic violence. In light of S.Q.'s departure from J.E.'s home, and given that the alleged acts of harassment by both parties stem from an argument concerning S.Q.'s use of J.E.'s car, to which she will no longer have access, S.Q.'s testimony is insufficient to establish the need for an FRO.

Similarly, J.E.'s testimony did not prove a well-founded fear of future acts of domestic violence by S.Q. When asked why he felt he needed an FRO to protect him from future acts of domestic violence by S.Q., J.E. testified, "I don't know what she is going to do." In later testimony, he claimed he feared S.Q. would break into the family's home or take his car. Yet, he admitted that he changed the locks on the house and that S.Q. does not have a key to the home or the car. Notably, J.E. admitted that S.Q. never in the past took his car without permission. His only complaint with respect to the use of his car was that S.Q. stayed out too late when he lent it to her. In addition, there is no evidence in the

record that S.Q. has ever trespassed on any property or entered J.E.'s home without his permission. J.E.'s concerns are insufficient to warrant entry of an FRO. The parties admit that the tension in their relationship arises when S.Q. resides with the family, circumstances that neither party intends to permit to occur in the future.

In light of the absence of evidence establishing the second prong of Silver, we need not address the adequacy of the trial court's findings of fact and conclusions of law with respect to whether either party committed the predicate act of harassment.

We reject J.E.'s argument that his due process rights were violated because he was not on notice that S.Q. intended to prove that he assaulted her. Although S.Q.'s complaint alleges only the predicate act of harassment, the complaint alleges in detail assaultive behavior against her by J.E. Harassment can be proven by an offensive touching. See N.J.S.A. 2C:33-4(b). J.E. was given notice defining the issues to be addressed at the FRO hearing and an adequate opportunity to prepare and respond. See J.D., 207 N.J. at 458. He also had an adequate opportunity to explain his placement of a tracking device on S.Q.'s car, an act not included in the allegations in S.Q.'s complaint.

A-0840-19

To the extent we have not specifically addressed any of the parties' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

The September 11, 2019 FRO entered against J.E. is vacated.  The September 11, 2019 order dismissing J.E.'s complaint and vacating the TRO against S.Q. is affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0840-19