# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0691-23
A-0765-23

S.W.I.,[1]

    Plaintiff-Respondent,

v.

M.K.I.,

    Defendant-Appellant.

_____

M.K.I.,

    Plaintiff-Appellant,

v.

S.W.I.,

    Defendant-Respondent.

_____

Submitted January 28, 2025 – Decided February 12, 2025

Before Judges Smith and Vanek.

---

[1] We use initials to protect the parties' privacy and the confidentiality of these proceedings in accordance with <u>Rule</u> 1:38-3(d)(10).

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket Nos. FV-02-2730-23 and FV-02-2731-23.

Bailey and Toraya, LLP, attorneys for appellant (Adam W. Toraya, on the brief).

Leopold Law, LLC, attorneys for respondent (Howard B. Leopold, on the brief).

PER CURIAM

These consolidated appeals arise out of a domestic violence trial between M.K.I. and S.W.I., husband and wife, respectively. Both parties had secured temporary restraining orders (TROs) against one another, and in cross-complaints, filed for final restraining orders (FROs) under the New Jersey Prevention of Domestic Violence Act, N.J.S.A. §§ 2C:25-17 to -35, against one another. After a trial, the court made findings and granted an FRO against M.K.I. while dismissing the TRO against S.W.I.

M.K.I. appeals each order, contending that the trial court erred by making unsupported Silver[2] prong one and prong two findings in S.W.I.'s complaint against him, resulting in the issuance of an FRO. He also contends the trial court

---

[2] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

erred when it dismissed his TRO against S.W.I. because he had met his burden of proof under both prongs of Silver.

We affirm the trial court's order dismissing M.K.I.'s complaint. We also affirm the trial court's FRO against M.K.I.; however, our conclusion is grounded solely upon the predicate act of simple assault.

I.

At the time of the trial now before us on appeal, the parties had been married for more than twenty years and were in the midst of contentious divorce proceedings. We glean the relevant facts from the extensive record developed over the course of the parties' domestic violence litigation and the five-day trial. Three witnesses testified at trial, M.K.I., S.W.I., and their adult daughter, M.I. The court also had the opportunity to hear an audio recording made by M.K.I. and introduced at trial.

S.W.I.'s domestic violence complaint alleged that M.K.I. had committed the predicate acts of simple assault and harassment against her. In turn, M.K.I.'s complaint alleged S.W.I. had committed the predicate act of harassment against him. During the trial, S.W.I. testified to M.K.I.'s numerous physical assaults against her throughout the course of their marriage. She also testified in detail to an incident precipitated by an email M.K.I. sent to her claiming he had

A-0691-23

information which he threatened to disclose that would cause her to lose custody of their minor children, information he described as a "bombshell." Testimony adduced at trial also revealed that M.K.I. had physically assaulted his mother-in-law and children. M.K.I. denied S.W.I.'s allegations and testified that she was the initial aggressor in some incidents, including an incident in which he alleged S.W.I. approached him wielding a frying pan.

The trial court first made credibility findings, finding S.W.I. credible. Moving to M.K.I., the trial court stated that, based on his testimony at trial, it did not believe M.K.I. The court explained that M.K.I.'s evasiveness and lack of candor about a trip he took to Virginia led to its finding that he was not credible. Later in the trial, as the court conducted its Silver analysis, it found M.I. credible.

The trial court made factual findings, starting with M.K.I.'s complaint alleging that S.W.I. committed an act of harassment, namely "the frying pan incident." The court stated:

> And I have to say that I do not believe that . . . even if she harassed him with the frying pan that he needs a restraining order as a result of that event . . .
>
> Because what I[ am] hearing on the [recording] is [M.I.] screaming at her father and he is yelling back, "[g]et out of my room. Get out of my room."

4 <span>A-0691-23</span>

I did[ not] really hear much from [S.W.I.].  There was very little said about her involvement in . . . what was going on that day between [M.I.] and her father.  So[,] for whatever reason, [S.W.I.] did involve her daughter in this marital dispute because the daughter found out that the father had sent [her] mom an[] email saying that he was going to drop a bombshell and that set [M.I.] off.  It really did.

The court stated that while M.K.I. claimed he was scared S.W.I. would hit him with the frying pan, the audio did not corroborate his claims.

[Y]ou were not afraid of her . . .

She had a pan in her [hand], okay, but the fact that she had a pan did[ not] mean that she was threatening you with the pan or that you thought she was going to hit you over the head with the pan, because I do[ not] get that from listening to the [recording].

The court also found M.K.I.'s choice to record the incident without first calling 9-1-1 undermined his assertion that he was afraid.  The court further found M.K.I. knowingly "made a self-serving comment about the pan" because he knew he was recording the incident.  Finally, the court found that even if this incident or others M.K.I. cited during the trial—namely breaking a vase, getting rid of a photograph, and insulting M.K.I. and his family—comprised harassment, it would not find that M.K.I. had met his burden under prong two of <u>Silver</u>.  This was because the court also found that M.K.I. was not afraid of his wife.  The court then dismissed M.K.I.'s complaint.

5

Next, the court considered S.W.I.'s complaint. It found M.K.I. committed harassment, N.J.S.A. 2C:33-4, and simple assault, N.J.S.A. 2C:12-1, against S.W.I. As to harassment, the court cited the "bombshell" email that threatened to jeopardize S.W.I.'s custody of her children, M.K.I. exerting financial control over S.W.I., and M.K.I.'s threats that S.W.I. would no longer exist.

The court explained why these findings led to its determination that an FRO was warranted:

> Because when you threaten to take someone's children away [who has felt] powerless throughout the course of their relationship with you and . . . you[ have] gotten away with it; when you threaten to cut them out financially[,] that . . . does rise to the level of the cycle of domestic violence.

The court made no findings on M.K.I.'s purpose to harass S.W.I.

The court also found M.K.I. committed the predicate act of simple assault. The court cited S.W.I.'s credible testimony about M.K.I.'s assaults against her. Making Silver prong two findings, the court found that S.W.I. was "no saint," and had "played [her] part in all of this," but was afraid of her husband. Therefore, while the court found S.W.I. had "engaged in bad behavior as well," it concluded S.W.I. was "in need of protection because [M.K.I.'s] behaviors will not stop without it."

6

A-0691-23

The court determined S.W.I. "proved by a preponderance of the evidence two predicate acts[,] one of harassment and [simple] assault and that she [was] in need of protection." Consequently, the court issued the FRO against M.K.I.

II.

A.

Our limited scope of review in domestic violence cases is well established. "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

Deference is particularly warranted where, as here, "the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Such findings become binding on appeal because it is the trial judge who "'sees and observes the witnesses,'" thereby possessing "a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)). It follows that we will not disturb a trial court's factual

findings unless convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

Consequently, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). We do not, however, accord such deference to the court's legal conclusions, which are reviewed de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

B.

In J.D. v. A.M.W., 475 N.J. Super. 306, 313-14 (App. Div. 2023), we recited our well-settled analytic framework for domestic violence complaints:

> In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at

127).  The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

[(Alterations in original) (citations reformatted).]

### III.

M.K.I. contends that the trial court erroneously entered an FRO against him because the evidence did not support:  the finding of a predicate act against him, as required by Silver's first prong; or that a restraining order was necessary to protect S.W.I. from further abuse under Silver's second prong.  We are

unpersuaded, but we note our conclusions are limited to S.W.I.'s simple assault allegations. On those claims, we affirm for the reasons set forth in the trial court's comprehensive oral statement of reasons. We simply add that the ample record fully supports the trial court's findings on each Silver prong.

As to S.W.I.'s allegations of harassment as a predicate act, we reach a different conclusion than the trial court. Harassment, prohibited by N.J.S.A. 2C:33-4, is a predicate act of domestic violence. N.J.S.A. 2C:25-19(a)(13); J.D., 207 N.J. at 475.

> [A] person commits [the predicate act of harassment] if, with purpose to harass another, [the person]:
>
> > a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
> >
> > b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
> >
> > c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

A-0691-23

A violation of N.J.S.A. 2C:33-4(c) requires proof of a course of conduct. J.D., 207 N.J. at 478. "That may consist of conduct that is alarming[,] or it may be a series of repeated acts if done with the purpose 'to alarm or seriously annoy' the intended victim." Ibid. (quoting N.J.S.A. 2C:33-4(c)). Our Supreme Court has explained that this "phrase means 'to weary, worry, trouble or offend.'" Ibid. (citation omitted).

In evaluating a defendant's purpose, a judge is entitled to use "[c]ommon sense and experience." State v. Hoffman, 149 N.J. 564, 577 (1997). Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be relevant to and support an inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006).

The record shows the trial court failed to consider direct or indirect evidence on this specific question, making no findings. It follows that M.K.I.'s alleged acts of harassment cannot serve as a basis for entry of the FRO. Nonetheless, the FRO stands, given the trial court's cogent Silver analysis grounded in simple assault. Finally, M.K.I.'s claims that the trial court erred by dismissing his harassment complaint against S.W.I. are without merit, and we

11

affirm for the sound reasons expressed by the trial court in its oral statement of reasons without further comment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0691-23